## Sandback *against* Quigley.

When the disability of a plaintiff not only suspends the action, but destroys it altogether, it may be pleaded in bar as well as in abatement.

If a personal action which does not survive, is brought after the death of the party, the court may abate it on motion; or, if there be doubt about the fact, should put the party to his plea, and that without regard to the previous state of the pleadings, whether the defendant had pleaded in bar or not.

If the plaintiff in an action of dower die pending the action, it abates; there can be no substitution of her personal representatives for any purpose.

*Quære*—Whether the personal representative of a deceased widow may not maintain an action on the case against the heir for her portion of the proceeds of the estate, during the time she was kept out of possession.

ERROR to the district court of *Allegheny* county.

Elizabeth Sandback, for the use of Andrew M'Farland, against James Quigley. This was an action of dower, in which the defendant pleaded " *ne unques accouple.*" The cause afterwards came on for trial and the defendant withdrew his plea, and pleaded *"tout temp prist;"* to which there was no replication. On the trial of the cause, the defendant asked leave of the court to withdraw the plea of " *tout temp prist,*" and to plead " that the plaintiff was dead before suit brought."

To this the plaintiff objected:

1. Because the death of a party before suit brought, is matter in abatement.

2. That such plea can not be pleaded after a plea in bar.

3. That having gone to trial upon the plea of *"tout temp prist,"* the defendant can not withdraw it for the purpose of pleading to the disability of the plaintiff.

[Sandback v. Quigley.]

*Grier,* president, was of opinion that there was no issue joined in the cause, inasmuch as the defendant was the feoffee of the heir; the plea of *" tout temp prist"* was irrelevant and a nullity, even if it had been replied to, which it was not. But inasmuch as the death of the party would not abate the suit, but put an end to the action, he inclined to the opinion that it might be pleaded either in bar or abatement, and, under our act of assembly, at any time.

The plea, therefore, was received, and upon it the jury found for the defendant, upon proof of the fact that the plaintiff had been absent for seven years, without having been heard from.

*M'Candless,* for plaintiff in error, cited 1 *Com. Dig.* 18, 19, letter E; 1 *Vin. Ab.* 94, letter K, pl. 19; 1 *Wils.* 308.

*Metcalf, contra,* cited 1 *Chit. Pl.* 445; 1 *Saund. Rep.* 275; 2 *Bos. & Pul.* 125.

The opinion of the Court was delivered by

ROGERS, J.—The granting and refusal of amendments at common law, are so much in the discretion of the court, as not to be the subject of error. Thus, in Burke *v.* Herber, 2 *Watts* 206, it is ruled, that it is not error to refuse to permit a plaintiff to amend his declaration, after a judgment of demurrer against him. It is there said, on the authority of Renniger *v.* Thompson, 6 *Serg. & Rawle* 2; and The King *v.* The Mayor and Burgesses of Grampond, 7 *Term Rep.* 699, that matters in pure discretion are not the subject of a writ of error; that amendments, by the inherent power of the court, are reducible to no certain rule, each particular case being left, on its own circumstances, to the mere discretion of the court. But this principle does not apply to amendments prescribed by the act of 1806. The act prescribes, that no plaintiff shall be nonsuited for any informality in any statement, or declaration filed, or by reason of any informality in entering a plea; but when, in the opinion of the court, such informality will affect the merits, the plaintiff shall be permitted to amend his declaration or statement, and the defendant may alter his plea or defence, on or before the trial of such cause. And if by such alteration or amendment, the adverse party is taken by surprise, the trial shall be postponed to the next court. The intention of the legislature evidently was, to prevent a plaintiff being put out of court by any informality in the pleadings, and to secure to each party, a full opportunity of trial on the merits. For this reason it was ruled that amendments under the act, are mandatory and not discretionary, and hence a refusal to allow an amendment was the subject of error. This has been decided in Young *v.* Cam, 2 *Binn.* 68; Glazier *v.*           8 *Serg. & Rawle* 498; Mann *v.* Montgomery, 10 *Serg. & Rawle* 192; Newlin *v.* Palmer, 11 *Serg. & Rawle* 98. All these are cases where the court refused to allow the amendment, and thereby deprived the

party of a right secured to him by the act, with the exception of Newlin *v.* Palmer, 11 *Serg. & Rawle* 98, where the court reversed the cause, because the court of common pleas permitted an amendment which went to introduce a new cause of action. Although not disposed to quarrel with that case of Newlin *v.* Palmer, yet the inclination of my mind is adverse to the reversal of a cause for permitting an amendment that may, and often does, promote the substantial justice of the case. It must be a strong case of perverted power, depending, as it necessarily must, on so many circumstances, and resting so much on sound discretion to justify a reversal for that cause alone. But we do not deem this an amendment which calls for the interposition of the court; this was a real action, to which the defendant in the first instance pleads *ne unques accouple*, which, with leave of the court, was withdrawn, and afterwards the defendant pleaded *tout temp prist*. There was no replication to the plea, and besides, the plea was irrelevant to the subject matter, as such a plea is bad by the alienee or feoffee of the heir, who from the nature of the thing could not always have been ready to assign dower to the widow. The feoffee of the heir cannot plead *tout temp prist*, because he had not the land all the time, from the death of the husband, and therefore the demandant shall recover the mesne profits and damages against him. *Co. Lit.* 33 *a;* 2 *Bac. Ab.* 392; *Parker's Ev.* 305. As the case stood on the pleadings, the plaintiff might have taken judgment for the want of a plea. If then, the plaintiff might have considered the plea as a nullity, I see nothing to prevent the court, in that stage of the proceedings, from allowing a plea to be added, or more properly, to put the cause at issue by a proper plea. A dilatory plea cannot, in general, be pleaded after a plea in bar; but whether after the pleader has made a slip in pleading, he may not, with leave of the court, withdraw that plea and plead in abatement, is not so clear, and particularly when the plea itself is a nullity. However this may be, we do not consider it such a departure from the spirit of the act of 1806, as to be the subject of error. It will be better to leave such cases, when they occur, to the sound discretion of the court that tries the issue, for it is impossible for us, with the lights we have, and sitting as a court of error, to judge of all the circumstances which may enter into the case. Besides, I am by no means convinced that in an action of dower, which is a real action, the death of the plaintiff may not be pleaded in bar. In general, when the action survives, the death of the plaintiff must be pleaded in abatement, but it is a rule in pleading, that pleas in abatement must give the plaintiff a better writ. In pleading a mistake in form, in abatement of the writ, the plea must, at the same time correct the mistake, so as to enable the plaintiff to avoid the same objection in framing his new writ. And this is often a criterion to distinguish, whether a given matter should be pleaded in abatement or in bar. A plea in bar, which denies that the plaintiff has any cause of action, cannot, of course,

give a better writ, which is the distinguishing characteristic of a plea in abatement, 1 *Saund.* 281, (*n.* 4;) Evans *v.* Stephens, 4 *Term Rep.* 227. Here the death of the plaintiff put an end to the action, for under no form of writ, can the action of dower afterwards be sustained. It was, therefore, impossible to give the plaintiff a better writ, which in general, although not always, is an essential requisite to a plea in abatement. It is not always necessary, as I suppose, because sometimes the same matter may be pleaded in abatement, or in bar, as in replevin for goods, the defendant may plead property in himself or in a stranger, either in abatement or in bar. So outlawry for felony, alien enemy and attainder, where the cause of action is thereby forfeited, may be pleaded either in abatement or in bar; and where the defendant has omitted to plead in due time, he may plead in bar. Where the plaintiff's disability merely suspends the right of action, and does not destroy it, it can only be pleaded in abatement, and when the disability is removed, the suit will proceed. But when the disability of the plaintiff not only suspends the right of action, but destroys it altogether, I cannot see the difficulty in allowing it to be pleaded in bar, as well as in abatement. Indeed, the analogy would seem to show, that a plea in bar was ,the proper plea, although the cases cited appear to allow the death of the plaintiff to be pleaded at the election of the pleader in abatement or in bar. When the action dies with the party, as in trespass, slander, &c., the death of the plaintiff may be suggested, whereupon the action abates; and if a personal action which does not survive, is entered after the death of the plaintiff, the court would, I apprehend, on motion abate the writ, or when there was doubt as to the fact, would put the party to his plea, and that without regard to the state of the pleadings or an inquiry whether the defendant had previously put in a plea in bar. The defence, although it may admit that the plaintiff may have had a cause of action, may yet insist that it has been determined by some subsequent matter, viz., the death of the plaintiff, which puts an end to the action.

It has been suggested that damages may be recovered, in this action, from the death of the husband until the death of the widow. Dower being a real action, no damages were recoverable, at the common law, by the wife for the detention; but this defect was remedied by the statute of Merton, which gives damages to the widow to the amount of the whole dower, from the time of the death of the husband until the day that the widow, by the judgment of the court, recovers seisin of her dower. *Parke on Dower* 301. The damages are a consequence, or an incident, of the judgment, and can only be assessed when there is a judgment of seisin. At law, the widow loses her damages if the tenant dies after judgment and before they are assessed; and also, the damages are lost to her personal representatives, if she herself dies before the damages are ascertained. This is at law, but a different rule prevails in equity.

[Sandback v. Quigley.]

A court of chancery will decree an account of rents and profits against the respective representatives of the several parties who may have been in possession since the death of the husband, provided that at the time of the bill filed, the legal right to damages was not gone. And although the widow dies before she has established her right to dower, equity will, in favour of her personal representative, decree an account of the rents and profits of the lands of which she may afterwards appear dowable. Curtis *v.* Curtis, 2 *Bro. C. C.* 632; Dormer *v.* Fortescue, 3 *Atk.* 130; 1 *Fonb. Equity* 23; Wakefield *v.* Child, *Pat.* 332. And these rules are founded in equity, for it would be unreasonable that the widow, or her personal representatives, should be debarred from damages when the heir happens to die before she has established her right, or where she dies before judgment in her favour, when the enjoyment of her dower is prevented by the wrongful act or deforcement of the heir or feoffee. At law, the demandant recovers from the feoffee all the mesne profits of the land, without regard to the time he occupied it, for the law leaves him to provide a recompense or indemnity from the heir, which, if he neglects to do, is his own folly. *Co. Litt.* 33 *a;* 2 *Bac. Ab.* 392; 1 *Keb.* 87; *Parke* 305. But in equity an account will only be decreed for the time the premises were in the actual occupation of the heir or feoffee. Curtis *v.* Curtis, 2 *Bro. C. C.* 602; Dormer *v.* Fortescue, 3 *Atk.* 130; *Parke on Dower* 330. It has been urged that, as we have no court of chancery, equitable relief may be given in the action of dower, notwithstanding no judgment is or can be rendered. But this would be a novelty—an act of legislation, rather than judicial power; it would be too great an innovation on established forms, by an act of the court, to allow the substitution of executors as parties in an action of dower, to enable them to recover damages for the detention of the dower. But as the law should not be subject to the reproach of giving a right without a remedy, I would suggest that, until the legislature think proper to interfere, relief might be given in a special action on the case, by the personal representatives against the heir or feoffee, or against each or both, for the time they respectively occupied the premises.

Judgment affirmed.